In the Matter of the WELFARE OF
the C. CHILDREN.

STATE of Minnesota, Respondent,

v.

PATRICK J.C. and Bernice
K.C., Appellants.

No. C6–83–1247.

Court of Appeals of Minnesota.

May 1, 1984.

Robert R. Maunu, Pipestone, for appellants.

Scott L. Barduson, Pipestone, for State.

Benjamin Vander Kooi, Jr., Luverne, for C. Children.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This appeal arises from an order of the Pipestone County Court following a court trial, finding the C. children neglected under Minn.Stat. § 260.015, subd. 10(b), (e) (1982). The parents contend that (1) the evidence was insufficient to support the court's finding; (2) evidence was improperly excluded; (3) evidence tainted by an unconstitutional search and seizure was improperly admitted; (4) their right to counsel was violated; and (5) the disposition was an abuse of discretion. We affirm the portion of the court's orders finding the four children, M.C.C., C.L.C., J.S.C. and B.R.C., neglected, but reverse that part finding J.I.C., P.H.C., A.P.C. and M.P.C. neglected.

## FACTS

Appellants Patrick and Bernice C. moved from Minneapolis to Pipestone where they operated a motel. The C.s became the subject of a neglect petition filed by Pipestone County welfare authorities after several instances of sexual impropriety between Patrick and their adoptive daughters, C.L.C. and J.S.C., became known to the agency. The agency learned that Patrick engaged in a skinny-dipping episode with the girls in which he forcibly removed C.L.C.'s bikini bottom and rubbed his penis against her rear. Another time, he offered his daughters a quarter if they would remove their clothes and swim. While on route to Minneapolis, Patrick stopped near an abandoned farmhouse and photographed J.S.C. while she was naked and C.L.C. while she was in her bra and shorts.

The incident leading to the neglect petition occurred on April 5, 1983. Patrick gave C.L.C. a pill at bedtime and told her it was a diet pill. A few hours later he was in C.L.C.'s bed fondling her body, including her genital area. He then gave her a pill and told her it was a sleeping pill. These pills were actually prescribed medication for Patrick.

A preliminary order of the juvenile court placed C.L.C., J.S.C. and M.C.C. in the legal custody of the Pipestone County Welfare Board. The C.s and their other five children moved back to Minneapolis a short while later.

## ISSUES

I. Were the trial court's findings of neglect clearly erroneous?

II. Did the trial court abuse its discretion in excluding evidence of prior sexual conduct of a witness?

III. Did the trial court improperly admit evidence obtained in two searches?

IV. Did the trial court abuse its discretion by transferring legal custody of the children to the welfare board?

## DISCUSSION

### I

Appellants' initial contention is that the allegations in the neglect petition were not proved by clear and convincing evidence as required by Rule 59.05, Minn.R.Juv.P. The trial court found that the C. children were neglected within the meaning of the Juvenile Court Act. Minn.Stat. § 260.015, subd. 10(b), defines a neglected child as one " * * * without proper parental care because of the faults or habits of his parent, * * * ", and subdivision 10(e) also defines a neglected child as one "[w]hose occupation, behavior, condition, environment or associations are such as to be injurious or dangerous to himself or others."

Appellants admit the evidence is sufficient to show Patrick failed to provide parental care. However, appellants argue

that the record is insufficient with regard to Bernice. The trial court's findings did not explicitly refer to Bernice. The court did refer to the "damaging pattern of behavior on the part of each parent in falsely minimizing the conduct of Mr. C., principally by depicting sexual misconduct as part of child training, and in falsely depicting as deceitful the honest statements of fact by the two female children directly involved in the misconduct."

■ Although the trial court's findings are not particularly specific, they are sufficient to afford this court a meaningful review when supplemented by the record. *See In re the Welfare of I.O.S.,* 309 Minn. 78, 244 N.W.2d 30 (1976). The findings as a whole "reflect that the trial court has taken the statutory factors into consideration * * *." *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 80, 249 N.W.2d 168, 172 (1976). The record shows that Bernice played an active role in agreeing to the skinny dipping. She was aware of and approved of what went on at the picture-taking episode. Finally, after discussing the April 5, 1983, bedroom incident with C.L.C., Bernice chose not to believe it and ignored the incident. Her fault is her passive acceptance of her husband's conduct toward the children. The neglected children's welfare cannot be guaranteed by such a guardian. The court's findings are supported by substantial evidence and are not clearly erroneous. Rule 52.01, Minn.R.Civ.P. *See In the Matter of the Welfare of J.M.S.,* 268 N.W.2d 424, 428 (Minn.1978).

■ However, the record does not support the trial court's finding that all of the five children living with the C.s in Minneapolis were neglected. Minn.Stat. § 260.015, subd. 10, clearly requires evidence that children are neglected. The trial court found:

> [t]he unresolved occurrence of serious sexual misconduct, together with associated minimizing and deceit, creates circumstances of behavior, condition, environment and associations which are injurious to all of the children in the family; these injurious environmental circum-

stances are exaggerated by the generally manipulative and domineering posture of the father on matters of concern to the family.

■ The record fails to establish that all of these boys were without proper parental care or otherwise neglected. The court apparently was referring in large part to certain disciplinary methods used by Patrick, such as making a rambunctious child in a car walk alongside the road for a mile. Children are not neglected in Minnesota merely because a parent is a harsh disciplinarian. Further, the record is devoid of any evidence that the parents' behavior was or would be injurious to all of these boys. Significantly, no expert testimony was introduced which may have addressed this issue. However, evidence in support of a motion to modify the dispositional order as to B.R.C., received by this court as a result of exigent circumstances arising during the appeal process, is sufficient to sustain the trial court as to that child. The published Internal Rules (2.2) of this court provide for priority handling of child custody matters to avoid damage to the welfare of the child by delays in the appeals process.

## II

■ Appellants claim that the trial court improperly excluded evidence of prior sexual conduct of C.L.C. offered for impeachment purposes. The trial court's ruling was clearly within the rule that:

> evidentiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are committed to the sound discretion of the trial judge and will only be the basis for reversal where that discretion has been clearly abused.

*Jenson v. Touche Ross & Co.,* 335 N.W.2d 720 (Minn.1983). Further, the evidence sought to be introduced was not probative of C.L.C.'s truthfulness. *See* Rule 608, Minn.R.Evid. The trial court did not abuse its discretion in excluding this evidence.

## III

■ Appellants also claim that the trial court improperly admitted evidence obtained in two separate searches. The first search was supervised by a Pipestone County Sheriff pursuant to a valid search warrant to look for business records. This search resulted in the seizure of various letters, magazines and videotapes from a locked file drawer which were used at trial. Without expressing any opinion as to applicability of the exclusionary rule to civil cases, if any error occurred, it was merely harmless because substantial injustice did not occur. Rule 61, Minn.R.Civ.P. *See also Chambers v. Maroney*, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982–1983, 26 L.Ed.2d 419 (1970). This evidence was clearly insignificant and was not even referred to by the trial judge in the findings. The only reference was in the accompanying memorandum in which the court stated, "Concern is legitimate regarding the possession and use by Mr. C. of videotapes of an unsavory kind."

■ The second search was also conducted by the Pipestone County Sheriff's office pursuant to a valid search warrant. This search resulted in the seizure of various pills. The appellants claim their right to counsel was infringed because the search continued after they requested an attorney. We are unaware of any authority which requires the interruption of the execution of a valid search upon the request for an attorney.

## IV

1. The appellants contend the trial court abused its discretion in its disposition order. The remedial powers of the juvenile court to deal with neglected children are in Minn.Stat. § 260.191, subd. 1 (1982). This statute provides:

If the court finds that the child is neglected, dependent, or neglected and in foster care, it shall enter an order making any of the following dispositions of the case:

(a) Place the child under the protective supervision of the county welfare board or child placing agency in his own home under conditions prescribed by the court directed to the correction of the neglect or dependency of the child;

(b) Transfer legal custody to one of the following:

(1) A child placing agency; or

(2) The county welfare board;

(c) If the child is in need of special treatment and care for his physical or mental health, the court may order the child's parent, guardian, or custodian to provide it. If the parent, guardian, or custodian fails to provide this treatment or care, the court may order it provided.

The trial court transferred legal custody of C.L.C., J.S.C. and M.C.C. to the Pipestone County Welfare Board with instructions to place the children in a foster home. J.I.C., B.R.C., P.H.C., A.P.C. and M.P.C. were placed in their parents' home in Minneapolis, but under protective supervision of public welfare personnel in Pipestone and Hennepin Counties.

■ The trial court did not abuse its discretion in the disposition of the children, C.L.C., J.S.C., M.C.C., and B.R.C. The court determined that C.L.C., J.S.C. and M.C.C.'s best interests were in keeping them in their current Pipestone home in a familiar locale and school system until their parents are capable of giving proper care. Visitation was expressly provided by the court. We find no merit in appellants' argument that the 200-mile drive from Minneapolis to Pipestone is too costly for them.

■ The disposition of four of the other children, however, is affected by our earlier analysis determining that these children were not neglected. The order placing them under protective supervision of Pipestone and Hennepin County welfare authorities must therefore be vacated as to them.

2. At oral argument it was brought to our attention that B.R.C. was recently taken to the Bridge for Runaway Youths in Minneapolis. His legal custody was transferred to the Pipestone County Welfare

Board by order of a Pipestone County Court judge on March 16, 1984. We stayed enforcement of this order, as well as a prior order of the Pipestone County Court dealing with the C. matter, dated February 22, 1984. We now take this opportunity to clarify the powers of the juvenile court during the pendency of an appeal to this court.

■ The general rule is that an appeal, when perfected, divests the trial court of jurisdiction. *Evans v. Blesi*, 345 N.W.2d 775 (Minn.App.1984); 4 Am.Jur.2d *Appeal & Error*, § 352 (1962). However, this rule is subject to a number of exceptions. As the Minnesota Supreme Court said in *State v. Barnes*, 249 Minn. 301, 302–03, 81 N.W.2d 864, 866 (1957):

> Pending a duly executed appeal, the jurisdiction of a trial court is *suspended* only as to those matters necessarily involved in the appeal, not as to those matters which are independent of, or which are supplemental to, the appeal or collateral to the proceeding in which the appealed order or judgment was rendered.

> Among the matters over which the trial court retains jurisdiction pending an appeal are those which are ancillary or supplemental to the appeal as in aid of its proper presentation, such as orders to correct the record or to make and certify a settled case or bill of exceptions.

■ Juvenile courts have continuing jurisdiction over matters not directly involved in or essential to the appeal. *Rippel v. Rippel*, 69 Ohio App.2d 503, 328 N.E.2d 816 (1974). It retains a residuum of jurisdiction to handle issues involving the child's welfare. The reason for this is common sense. The juvenile court has original and exclusive jurisdiction in neglect proceedings. Minn.Stat. § 260.111 (1982). Our review function is not designed to supervise or control juvenile court cases with their assorted complications. *Rippel*, 69 Ohio App.2d at 506, 328 N.E.2d at 820. "The circumstances of a child's life change more rapidly and are subject to a wider range of external factors than is true for most adults. Children move from childhood to adolescence to adulthood in a relatively short period of time. In addition, total family situations are often fluid, with the child being able to exercise little control over his or her environment." ABA, *Juvenile Justice Standards Relating to Appeals and Collateral Review*, Commentary, § 6.1 (1980). As such, Rule 63.01, subd. 2(A), of the Minnesota Rules of Juvenile Procedure provides, "[a]n appeal *does not stay* the order of the Court but the reviewing court may in its discretion and upon application stay the order." (Emphasis added).

■ In neglect cases, the juvenile court retains jurisdiction to modify dispositions because such decisions frequently must be made quickly to protect the child. However, the juvenile court does not have the power to alter its adjudication of neglect once an appeal of this determination has been perfected. Accordingly, we reinstate the March 16, 1984, order modifying disposition by transferring legal custody of B.R.C. to the Pipestone County Welfare Board.

## DECISION

We hold that the evidence supports the trial court's findings that M.C.C., C.L.C., J.S.C. and B.R.C. were neglected. The record does not support the finding that the four children, J.I.C., P.H.C., A.P.C. and M.P.C. were neglected. Therefore, the order of the trial court placing the latter four children under supervision of Pipestone and Hennepin County Welfare is vacated. The March 16, 1984, order transferring legal custody of B.R.C. to Pipestone County Welfare, which we stayed on March 21, 1984, is thus reinstated.

The trial court did not abuse its discretion in excluding evidence of prior sexual conduct of a witness. The admission or use of evidence obtained in a search was, if error, harmless. Appellants' right to counsel was not violated by the continuation of a lawful search in the face of a request for an attorney. Finally, the court did not

abuse its discretion in the disposition of M.C.C., C.L.C., J.S.C. and B.R.C. In light of our determination that J.I.C., P.H.C., A.P.C. and M.P.C. were not neglected children, no dispositional authority exists over them. Therefore, the Pipestone and Hennepin County Welfare Boards are hereby ordered to remove these four children from their protective supervision. Pipestone County may maintain its supervision over M.C.C., C.L.C., J.S.C. and B.R.C.

Affirmed in part, reversed in part.