**In the Matter of the WELFARE OF P.R.L.**

**No. C4–99–1214.**

Court of Appeals of Minnesota.

Feb. 29, 2000.

Review Granted April 25, 2000.

William M. McGee, Chief Fourth District Public Defender, Warren R. Sagstuen, Assistant Public Defender, Minneapolis, for appellant.

Amy Klobuchar, Hennepin County Attorney, Andrew J. Mitchell, Assistant County Attorney, Minneapolis, for respondent Hennepin County Department of Children and Family Services.

Gerald M.B. Chester, Minneapolis, for guardian ad litem Lou Detwiler.

Considered and decided by DAVIES, Presiding Judge, CRIPPEN, Judge, and SCHUMACHER, Judge.

## OPINION

CRIPPEN, Judge

Challenging the trial court's decision to lift a stay and enter an order terminating her parental rights, appellant Roxanne La'Near contends that the court did not make the necessary findings of fact. We reverse and remand.

## FACTS

Eleven-year-old P.L. and his two older siblings (who have been placed in long-term foster care and whose parentage is not at issue in this case) have been in out-of-home placement since June 1996. In January 1998, the county petitioned to terminate appellant's parental rights to P.L., alleging that appellant had neglected her children; that both appellant and her boyfriend, Willie Richardson, had physically abused the children; that Richardson physically abused appellant in the P.L.'s presence; that Richardson threatened appellant and the children with a knife; that appellant shot at Richardson while the children were in the home, with the bullet lodging in the bedroom wall of one of the children; that appellant allowed Richardson to live in the home in violation of the terms of a protective order; and that the children's father, A.L., had also physically abused both appellant and the children.

In April 1998, on a stipulation of the parties, the trial court issued its Stayed Findings of Fact, Conclusions of Law and Order for Termination of Parental Rights. Apparently relying primarily on the effect on her child of appellant's abusive and unhealthy relationship with Richardson, the court found that it was in the best interests of the child to terminate appellant's parental rights, but that it was also in the best interests of the child to stay the entry of the order. The court apparently stayed its order because "[m]other [was] making progress on her Case Plan, and reunification [was] possible within the next six months." The stay was made subject to certain conditions, including the requirement that appellant complete a revised case plan and avoid all consensual contact with Willie Richardson. The court concluded its order by stating that any

> motion for alternative permanency will result in a hearing limited to the sole issue of whether the alternative permanency option being proposed is in the child's best interests as compared to permanency in the form of entering of

this Order to Terminate Parental Rights.

In June 1998, the county brought a motion for entry of the termination order on the ground that appellant had had consensual contact with Willie Richardson in May 1998. A hearing on the motion was conducted by a different trial judge in August 1998. Appellant admitted she had had consensual contact with Richardson. In examining appellant about her willingness to admit, without a contested hearing, that she had violated the stay condition, the judge questioned appellant as follows:

> Q: You understand that what's going to happen next is I'm going to enter some form of permanency order that there is going to be termination of parental rights as to [P.L.] or some other form of permanency that will be on a motion filed after a hearing, right?
>
> A: Yes, I understand.
>
> Q: Okay. So we're not going back. We're looking forward and that's where we're going, right?
>
> A: Uh-huh.

One week after this hearing, the court issued an order that provided, under the heading "Findings of Fact," as follows:

> Mother admitted to violating the court's stayed TPR order by associating with Willie Richardson in May of this year. The court is not immediately vacating the stay and entering the TPR order * * * because it is not convinced that termination of parental rights is in his best interest. The court requested the parties to meet for an additional hearing, so a "round table" discussion regarding the child's best interests can take place.

The order also provided that it "[c]ontinue[d] prior consistent orders pending the next hearing."

In September, the court ordered the county to seek a foster home in which P.L. could be placed with his older sibling, A.L. Because P.L. was less than 12 years old, a statute provides that he might be placed in long-term foster care only if he were placed with an older sibling. Minn.Stat. § 260C.201, subd. 11(e)(3) (Supp.1999).[1]

In November, appellant moved for reunification, arguing in essence that her contact with Willie Richardson should not be grounds for lifting the stay and entering the order terminating parental rights. Appellant offered her attorney's affidavit in which the attorney swore that Richardson was involved in a separate termination of parental rights case not involving appellant or her children and in connection with that case, had completed a case plan, including a domestic-abuse program and parenting program. Appellant contended that her contact with Richardson should not be cause for terminating her parental rights because Richardson had become less dangerous to her and the children. Furthermore, appellant asserted that, aside from her contact with Richardson, she had successfully completed her case plan. Later in November, the county filed an affidavit stating that it could not find a foster home where P.L. and A.L. could be placed together. Subsequently, the trial court revoked the stay of the order terminating appellant's parental rights and entered an order terminating her parental rights. The county moved to amend the findings of fact; appellant moved for a new trial and for a stay pending appeal. After a hearing, the trial court amended one

---

1. The legislature recently repealed and reenacted Minnesota's child-protection statutes. *See generally* 1999 Minn. Laws ch. 139. We use the new numbering because the legislature intended its action to be a "clarification and reorganization" of these laws that "shall not be construed by a court or other authority to alter them." *Id*. at art. 4, § 1.

The parties have not addressed the question whether judicial discretion on permanency planning for a child is limited solely to the relief listed in the provisions of Minn.Stat. § 260C.201, subd. 11(e)(3).

P.L. becomes 12 years of age on July 6, 2000.

finding of fact but otherwise left the order intact.

## ISSUE

Did the trial court make the necessary findings of facts before revoking the stay and entering the order terminating appellant's parental rights?

## ANALYSIS

■ On review of a termination order, this court

> must determine whether the trial courts findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous.

*In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). The party petitioning to terminate parental rights must prove the existence of a statutory ground by clear and convincing evidence. *In re Welfare of J.S.*, 470 N.W.2d 697, 701 (Minn.App.1991), *review denied* (Minn. July 24, 1991). The existence of a single statutory ground is sufficient to support a termination of parental rights. *In re Welfare of Maas*, 355 N.W.2d 480, 483 (Minn.App.1984). If one or more of the statutory criteria are met, the court must give paramount consideration to the child's best interests. Minn. Stat. § 260C.301, subd. 7 (Supp.1999); *M.D.O.*, 462 N.W.2d at 378.

■ Appellant argues that the June 1999 amended order lifting the stay and entering the order terminating her parental rights is improper because it does not contain findings addressing "conditions that exist[ed] at the time of the hearing." *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). The record contains findings on facts existing at the time of the original hearing that led to the April 1998 stayed order but there are no findings on conditions in 1999. This case requires a determination of whether the *Chosa* requirement for contemporaneous findings governs the hearing on respondent's motion to lift the stay of the court's termination order.

In *In re Welfare of D.T.J.*, 554 N.W.2d 104 (Minn.App.1996), the appealing parent questioned the sufficiency of revocation findings but only insofar as they might support a conclusion that termination currently served the best interests of the child. We examined the revocation findings regarding the current circumstances in the case—using the same standards applied when examining a best-interests finding in an original termination order, but we determined that the findings were adequate.

■ In the immediate case, the defending parent has questioned the continued existence of grounds for termination. In addition, the original ruling indicated that reunification might be possible within six months. In these circumstances, we can identify no reason to confine review of the evidence and findings to the circumstances existing when the termination was decided. The *Chosa* requirement for contemporaneous findings must be applied to the hearing on respondent's motion to revoke the stay of the trial court's earlier order terminating parental rights.

■ As we have noted before, " '[t]he circumstances of a child's life change more rapidly and are subject to a wider range of external factors than is true for most adults.' " *In re Welfare of the C. Children*, 348 N.W.2d 94, 99 (Minn.App.1984) (quoting ABA, *Juvenile Justice Standards Relating to Appeals and Collateral Review*, Commentary, § 6.1 (1980)). As a result, in cases concerning children it is especially important that determinative facts be as current as possible. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 211–212 (Minn.1988) (in lengthy child custody dispute, evidence concerning four and one-half years since marital separation "crucial" to determining current best interests of child).

For purposes of the immediate case, we are mindful of special considerations in reaching a decision on findings. First, the revocation in this case occurred more than

a year after the termination order was stayed. *Cf. D.T.J.*, 554 N.W.2d 104 (revocation proposed three months and decided six months after the stay). Second, it is evident that the original termination decision was made in spite of judicial recognition that appellant's circumstances were improving. The court specifically found that [m]other is making progress on her Case Plan, and reunification is possible within the next six months. Finally, it is evident that the initial decision was made with misgivings regarding the alternative permanency plan of long-term foster care. The court noted that a future motion could concern "whether the alternative permanency option being proposed is in the child's best interests as compared to permanency in the form of entering of this Order to Terminate Parental Rights."

In its order revoking the stay of termination, the trial court did not examine the conditions existing at the time appellant's parental rights were finally terminated. Although it expressly incorporates earlier findings, the amended June 1999 order does not contain specific factual findings concerning conditions on grounds for termination that existed when hearings on revocation were conducted in April and June 1999. The only finding relevant to appellant's current fitness to be a parent is a finding that appellant's argument that her contact with Willie Richardson was not sufficient to justify termination "reflects her persistent lack of appreciation for the purpose of and need for no contact with Willie Richardson and also reflects her lack of appreciation for the emotional abuse inflicted upon her children when they witnessed domestic abuse between Willie Richardson and her." This finding does not declare clear and convincing evidence that at least one statutory condition justifying termination was satisfied as of the time of the 1999 hearings on the county's motion to revoke the stay and enter the termination order. As a result, we reverse the trial court's order terminating appellant's parental rights and remand for an evidentiary hearing at which the parties can present evidence concerning any change in the circumstances of the case since April 1998 that affects the judicial determination of whether grounds exist for termination of appellant's parental rights.

■ In addition to the lack of findings on current conditions, the trial court's orders raise other issues that can be addressed only by a remand of the case. For example, in order to terminate parental rights,

> [t]he petitioning party must prove a consistent pattern of specific conduct or specific conditions existing at the time of the hearing that appear will continue for a prolonged, indefinite period * * *.

*M.D.O.*, 462 N.W.2d at 377. In its original order, in which the court terminated appellants rights but then stayed the termination, the court specifically found that appellant was making progress and that reunification was possible within the next six months. This finding, suggesting that the conditions justifying termination may soon cease, is inconsistent with the requirement that specific conduct or conditions exist that appear will continue for a prolonged, indefinite period.

The court also specifically found in the original order that termination was in P.L.'s best interests and accordingly terminated appellant's parental rights, but also said that there should be a future decision on the merits of an alternative permanency option of long-term foster care for the child. It would have been improper for the court to terminate appellant's parental rights, as it declared, if long-term foster care could have served P.L.'s best interests instead of termination. Similarly, the court in its August 1998 order, after appellant admitted to violating a condition of the stay, said that it was "not immediately vacating the stay and entering the TPR order * * * because it [was] not convinced that termination of parental rights [was] in [P.L.'s] best interest." Again, if termination was not in P.L.'s best interests, it appellant's parental

rights could not be terminated, even in a stayed order.

■ When reviewing parental termination cases, "appellate courts demand clear and specific trial court findings on the statutory grounds for termination." *In re Welfare of D.F.B.*, 412 N.W.2d 406, 410 (Minn.App.1987), *review denied* (Minn. Nov. 18, 1987). Such findings must "address the statutory criteria." *M.D.O.*, 462 N.W.2d at 375. Neither trial court order complies with these standards. The original termination order does not specify the statutory provision or provisions under which appellants parental rights were terminated; the revocation order does so, but in brief, conclusory language drawn from the statute. Together or apart, the initial order and the revocation order do not contain clear and specific factual findings that address the statutory criteria and demonstrate that a specific statutory ground for termination has been satisfied.

This opinion deals solely with the adequacy of trial court findings. In reversing the order of the trial court and remanding for an evidentiary hearing, we express no opinion on the ultimate issue of whether appellants parental rights should be terminated.

## DECISION

Because the record contains inadequate findings of fact to justify termination of appellant's parental rights, the termination decision is reversed and the case remanded for an evidentiary hearing.

**Reversed and remanded.**