**In the Matter of the WELFARE OF B.A.B., Juvenile.**

No. C7–97–1140.

Court of Appeals of Minnesota.

Jan. 13, 1998.

John L. Fossum, Northfield, for appellant mother.

Larry Collins, Waseca County Attorney, Paul M. Dressler, Assistant Waseca County Attorney, Waseca, for respondent.

Considered and decided by LANSING, P.J., and WILLIS, and FOLEY,* JJ.

## OPINION

LANSING, Judge.

A parent challenges the district court's determination that her child is in need of protective services (CHIPS) as lacking necessary education under Minn.Stat. § 260.015, subd. 2a(3) (1996). The parent primarily challenges the legal adequacy of a finding of educational neglect when the child's absences do not meet the statutory definition of habitual truancy. We affirm.

## FACTS

Seven-year-old B.A.B. and her siblings live with appellant, their mother. B.A.B. attends a public elementary school. The family service coordinator for B.A.B.'s school filed a CHIPS petition alleging that B.A.B. is without necessary education because her parent is unable or unwilling to provide that care

and that B.A.B. is an habitual truant. The parent denied the allegations of the petition, and an adjudication hearing was held.

The evidence at the hearing demonstrated B.A.B. began the 1996–97 school year as a first-grade student, but was returned to kindergarten in November 1996 because of poor academic performance. She continues to struggle academically and receives special services in reading and math. By mid-September 1996 B.A.B. already had several absences. The family services coordinator made multiple visits to B.A.B.'s home to discuss school attendance. Various explanations were provided for B.A.B.'s absences, including illness and oversleeping. The meetings with B.A.B.'s parent did not result in any improvement in B.A.B.'s attendance. The coordinator testified that on at least five occasions during the current school year, she had personally gone to B.A.B.'s home to pick her up when B.A.B. did not arrive at school. A parenting aide who works with the family through a county human services program also stated that she had often given B.A.B. a ride to school because she had missed the bus.

The school attendance records show that B.A.B. was absent (excused and unexcused) for 20 full days of school between September 3, 1996, and April 2, 1997, that she was tardy nine times, and missed an additional morning session. The computer system for the kindergarten students tracks their attendance only every other day and thus the recorded absences do not register B.A.B.'s total absences.

B.A.B.'s parent testified that health problems, including earaches, asthma, and head lice, were the primary reason for B.A.B.'s absences from school. On some days B.A.B.'s parent contacted the school to explain why B.A.B. was absent, but on other days the family just overslept.

B.A.B.'s medical records show that she was seen by a doctor on seven of the days when the school records show she was absent from school. The entries for five of these visits

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI § 2.

indicate that B.A.B. was seen because of ear infections and was prescribed medication. But the entries for two other visits do not indicate that B.A.B. was unable to attend school. The entry for one visit indicates that B.A.B. "does not seem ill" and the entry for the other visit states that B.A.B. is able to participate in activities at school. A school summary of absences indicated that B.A.B. missed three full days of school without any reason and that B.A.B.'s parent reported illness and head lice as the explanation for the other absences.

The district court adjudicated B.A.B. to be in need of protection or services on the ground that B.A.B. is without necessary education because her parent is unable or unwilling to provide that care under Minn.Stat. § 260.015, subd. 2a(3) (1996). The court directed B.A.B.'s parent to ensure that B.A.B. attends school, specifying that the only valid excuse for missing school would be illness, verified by a physician's statement. The order also provided that absent an emergency, B.A.B.'s doctor appointments must be made after school hours.

## ISSUE

Does clear and convincing evidence support the district court's determination that B.A.B. is in need of protection or services because she is without necessary education due to appellant's neglect?

## ANALYSIS

■ Findings in a CHIPS proceeding will not be reversed unless clearly erroneous or unsupported by substantial evidence. *In re Welfare of D.N.*, 523 N.W.2d 11, 13 (Minn. App.1994), *review denied* (Minn. Nov. 29, 1994). Under the "clearly erroneous" portion of this court's review of the district court's findings, a district court's individual fact-findings will not be set aside unless the review of the entire record leaves the court "with the definite and firm conviction that a mistake has been made." *In re Welfare of D.T.J.*, 554 N.W.2d 104, 107 (Minn.App.1996) (quoting *In re Estate of Beecham*, 378 N.W.2d 800, 802 (Minn.1985)).

■ In juvenile protection proceedings, this court determines whether the record contains substantial evidence to support the district court's decision, taking into account that the burden of proof in the district court is "clear and convincing" evidence. *D.T.J.*, 554 N.W.2d at 108 (citing Minn. R. Juv. P. 59.05 and *In re Welfare of Rosenbloom*, 266 N.W.2d 888, 889–90 (Minn.1978)). The reviewing court will "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980).

The CHIPS petition alleged both educational neglect under Minn.Stat. § 260.015, subd. 2a(3), and that B.A.B. is an "habitual truant" under subsection 12 of the same statute. The district court determined that there was educational neglect under Minn. Stat. § 260.015, subd. 2a(3), but did not address the allegation that B.A.B. is an habitual truant.

A child is in need of protection or services when the child

> is without necessary food, clothing, shelter, ***education***, or other required care for the child's physical or mental health or morals because the child's parent, guardian or custodian is unable or unwilling to provide that care.

Minn.Stat. § 260.015, subd. 2a(3) (1996) (emphasis added).

An "habitual truant," defined in a separate subsection, is

> a child under the age of 16 years who is absent from attendance at school without lawful excuse for seven school days if the child is in elementary school or for one or more class periods on seven school days if the child is in middle school, junior high school, or high school.

Minn.Stat. § 260.015, subd. 19 (1996). B.A.B.'s parent contends that the record does not show more than seven unexcused absences which is necessary to sustain a finding of habitual truancy, and therefore the evidence is insufficient to support a finding of educational neglect. We disagree.

■ Statutes "in pari materia" are those "relating to the same person or thing or

having a common purpose." *Apple Valley Red–E–Mix, Inc. v. State,* 352 N.W.2d 402, 404 (Minn.1984) (citing *Black's Law Dictionary* (rev. 5th ed.1979)). Statutes in pari materia should be construed in light of one another. *Id.* But the educational neglect and habitual truancy provisions are not in pari materia because the statutes address different child protection issues. Truancy implies volitional conduct on the part of the child for which the child is responsible. *In re Welfare of B.K.J.,* 451 N.W.2d 241, 243 (Minn.App. 1990) (citing *In re L.Z.,* 396 N.W.2d 214, 218 (Minn.1986)). But when the child is absent from school because of the actions of the parent, the appropriate basis for extending protection or services is Minn.Stat. § 260.015, subd. 2a(3). *Id.* Because habitual truancy focuses on the behavior of the child, whereas educational neglect focuses on the behavior of the parent, the threshold requirement for a finding of habitual truancy that an elementary school child be absent from school for seven school days without lawful excuse does not apply to an educational neglect determination.

 B.A.B.'s parent contends that because B.A.B.'s absences from school were due primarily to her health problems, the evidence is not clear and convincing that the parent's conduct caused a severe deprivation of B.A.B.'s education. We agree that a previous opinion of this court holds that a "severe deprivation of education" is necessary "to warrant a CHIPS determination *and removal*" of children from a parent's home under Minn.Stat. §§ 260.015 and 260.191. *In re Welfare of T.K.,* 475 N.W.2d 88, 93 (Minn. App.1991) (emphasis added). But the district court did not order that B.A.B. be removed from her home. The court simply directed B.A.B.'s parent to ensure that B.A.B. attend school every day, schedule nonemergency medical appointments for after-school hours, and provide a physician's statement to verify B.A.B.'s absences for ill-

ness. Neither *T.K.* nor Minn.Stat. §§ 260.015 requires a showing of "severe deprivation" of education to support a CHIPS adjudication when the disposition does not involve the drastic step of removing the child from the home. *See In re Welfare of Wachlin,* 309 Minn. 370, 374, 245 N.W.2d 183, 185 (1976) (indicating that child's poor attendance and unkempt appearance at school were directly attributable to parent's habits and attitude and supported neglect determination).

Our review of the record convinces us that some of B.A.B.'s absences were due to illness and that B.A.B.'s parent has not demonstrated an indifferent attitude towards B.A.B.'s welfare. But the record amply supports the district court's findings with respect to B.A.B.'s unexcused absences and the finding that on other occasions the family services coordinator and county parenting aide assumed the responsibility of insuring B.A.B.'s attendance at school. We note also the evidence that regular school attendance is particularly critical for B.A.B. because of her academic problems. Under these circumstances, the parent's persistent failure to ensure B.A.B.'s regular attendance at school warranted the CHIPS adjudication.

## DECISION

The district court properly adjudicated B.A.B. to be a child in need of protection or services on the ground that she lacks necessary education because appellant is unable or unwilling to provide that care pursuant to Minn.Stat. § 260.015, subd. 2a(3).

**Affirmed.**