*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1241**

In the Matter of the Welfare of the Children of: S. D., Parent.

**Filed February 16, 2016
Reversed
Reyes, Judge**

Hennepin County District Court
File No. 27JV15925

Mary F. Moriarty, Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, Minnesota (for appellant mother S.D. and Child Ve.R.-B.)

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Petra Dieperink, Assistant Hennepin County Public Defender, Minneapolis, Minnesota (for Child Vi.R.-B.)

Jorge Enrique Saavedra Figueroa, Minneapolis, Minnesota (for father J.G-L.)

Nicole Winston, Minneapolis, Minnesota (guardian ad litem)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**UNPUBLISHED OPINION**

**REYES**, Judge

Appellant-mother challenges the district court's adjudication of her child as in need of protection or services (CHIPS), arguing that (1) the record does not support that

determination because there is no evidence of present neglect and (2) the district court failed to make sufficient findings that the CHIPS adjudication was in the best interests of the child. We reverse.

## FACTS

On February 25, 2015, respondent Hennepin County Human Services and Public Health Department (department) filed a CHIPS petition[1] alleging that appellant S.D.'s child Ve.R.-B. was in need of protection or services pursuant to Minn. Stat. § 260C.007, subd. 6(3), (4), (8), and (9) (2014). Specifically, the petition alleged that appellant was unable or unwilling to provide the proper parental or special care Ve.R.-B. needed and that Ve.R.-B.'s behavior, condition, or environment was such that it was injurious or dangerous to her or others. The petition stated that Ve.R.-B. had been diagnosed with anxiety and depression, and had been hospitalized three times for harming herself and for suicidal thoughts. Ve.R.-B. self-reported that she takes medication for her mental health condition and participates in therapy weekly. The petition further alleged that appellant was not attending therapy sessions with Ve.R.-B.'s therapist, not participating in family therapy, and "was also not following through with services for [Ve.R.-B.]." Despite the department's concerns, Ve.R.-B.'s placement remained with appellant under protective supervision of the department pursuant to Minn. Stat. § 260C.201, subd. 1(a)(1) (2014).

---

[1] The petition contains additional allegations regarding child Vi.R.-B., who is Ve.R.-B.'s sister, but Vi.R.-B. is not a party to this appeal. Appellant stipulated to a CHIPS adjudication for Vi.R.-B.

The district court held two pretrial hearings in April 2015 and scheduled a trial on the CHIPS petition on June 12, 2015.[2]  On the date set for trial, the parties stipulated to the admission of two documents labeled exhibit 3, Ve.R.-B.'s individual treatment plan, and exhibit 7, the department's pre-hearing report.

The district court found that the department "raised concerns" in its petition that "[appellant] was not following through on treatment for [Ve.R.-B.'s] mental health illnesses."  The court also noted that Ve.R.-B. had previously attempted suicide and had been hospitalized twice for cutting herself.  However, the court also found that "[Ve.R.-B.] is currently participating in individual therapy."  Finally, the court found that "it is in the best interests of [Vi.R.-B.] and [Ve.R.-B.] that the [d]epartment continue to monitor and provide services to [appellant], [Vi.R.-B.] and [Ve.R.-B.] as a family unit."  The district court concluded that Ve.R.-B. is a child in need of protection or services under Minn. Stat. § 260C.007, subd. 6(3), (4), (8), and (9), because appellant failed to follow "through on mental health services therapy, treatment and medication for the child's mental illnesses."  This appeal follows.

---

[2] While a trial initially was scheduled, the proceeding functioned more as a hearing because there was no sworn testimony and the district court stated it would "take [Ve.R.-B.'s] status under advisement but that status [would] be resolved at the time [it] issued the order."  The district court further requested a statement from the GAL who opined that Ve.R.-B. was currently doing well, but felt that Ve.R.-B. should remain on the petition principally so that the sisters could be in regular contact.

**I.     Adjudicating child Ve.R.-B. as in need of protection or services (CHIPS)**

Appellant argues that the CHIPS adjudication is not supported by clear and convincing evidence because the two exhibits do not provide evidence of present neglect, that at the time of trial the child was not at risk, and the statutory requirements of section 260C.007, subd. 6(3), (4), (8), and (9) were not met.  We agree.

A parent is presumed to be a fit and suitable person to care for his or her child.  *In re Welfare of C.K.*, 426 N.W.2d 842, 847 (Minn. 1988).  Before adjudicating a child as CHIPS, the district court must determine that at least one statutory basis exists to support its decision.  Minn. Stat. § 260C.007, subd. 6 (2014).  Findings in a CHIPS proceeding require proof by clear and convincing evidence.  *In re Welfare of B.A.B.*, 572 N.W.2d 776, 778 (Minn. App. 1998).  On appeal from a CHIPS determination, this court is "bound by a very deferential standard of review."  *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 734 (Minn. App. 2009).  Nevertheless, we must perform a "close review . . . into the sufficiency of the evidence to determine whether the evidence is clear and convincing."  *Id.* at 733 (citing *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn. 1998)).

A child may be adjudicated CHIPS under Minn. Stat. § 260C.007 subd. 6(3), (4), if the child is "without necessary required care for her physical or mental health" and "without the special care made necessary by a physical, mental or emotional condition" because appellant is "unable or unwilling to provide that care."  Minn. Stat. § 260C.007, subd. 6(8), (9), allows a CHIPS adjudication if the child's "behavior, condition, or

4

environment" is injurious or dangerous to herself or if the child "is without proper parental care because of the parent's emotional, mental, or physical disability or state of immaturity."

While no proof of "current abuse or neglect" is required, the key inquiry is whether "the child in question is being abused or neglected or *appears to be presently at risk*." *S.S.W.*, 767 N.W.2d at 732. A successful CHIPS petition requires proof of both an enumerated condition for child protection or services and a resulting need for protection or services. *Id*. at 728. Finally, the district court should not give undue weight to old evidence of neglect, and should fully consider new evidence of parental rehabilitation. *In re Welfare of A.R.W.*, 268 N.W.2d 414, 417 (Minn. 1978).

Here, the district court found that Ve.R.-B. had been diagnosed with major depression and oppositional defiant disorder, previously had attempted suicide, and had been hospitalized before the department filed a petition. The district court's findings rely on past events and information and do not address the issue of whether Ve.R.-B. is presently at risk or in need of protection or services. *Contra S.S.W.*, 767 N.W.2d at 731-32. At the time of trial, the department did not submit testimony or evidence supporting their "concerns."[3] To the contrary, the court found that "[Ve.R.-B.] is *currently* participating in individual therapy." (Emphasis added.) And the pre-hearing report filed on June 9, 2015, stated that Ve.R.-B. is currently in the care of appellant, is attending school and "reported doing well," has individual therapy weekly with Perspectives and

---

[3] We note that the majority of the petition and the pre-hearing report focused on Ve.R.-B.'s sister Vi.R.-B., not Ve.R.-B.

bi-weekly with a practitioner from FACTS in her home, and is reported to be "a bright young lady and has been doing well in therapy."

As in *S.S.W.*, the department relies on past harm and fear of possible future harm, which does not meet their legal burden of providing clear and convincing evidence of present risk. *Id.* at 725, 732 (affirming the district court's findings that, "the fear that [S.S.W's] history of child abuse might be repeated is not sufficient to meet [the department's] legal burden.") (alteration in original). As such, the district court's CHIPS adjudication is not supported by clear and convincing evidence.

## II. The district court's best interests findings

Appellant further argues that the district court failed to make sufficient findings to support its best-interests determination of present harm to the child. We agree.

The paramount consideration in CHIPS proceedings is the best interests of the child. Minn. Stat. § 260.001, subd. 2(a) (2014). A CHIPS order "shall also set forth in writing . . . why the best interests and safety of the child are served by the disposition and case plan ordered." Minn. Stat. § 260C.201 subd. 2(a)(1) (2014). "When determining a child's best interests, the district court traditionally considers the child's unique circumstances and individual needs." *S.S.W.*, 767 N.W.2d at 731 (citations omitted). We reiterate that findings in a CHIPS proceeding require proof by clear and convincing evidence. *B.A.B.*, 572 N.W.2d at 778.

Here, the district court referred to the GAL's statements that she believed it was "in Ve.R.-B.'s best interest to stay on the petition so that Ve.R.-B. may continue to receive services from the [d]epartment and the [d]epartment can more easily coordinate

6

sibling visits." Based on that finding, the district court determined "that it is in the best interests of [Vi.R.-B] and [Ve.R.-B.] that the [d]epartment continue to monitor and provide services to [appellant], [Vi.R.-B] and [Ve.R.-B.] as a family unit."

The record does not support this conclusion by clear and convincing evidence. As previously discussed, the findings appear to be based on past events rather than on the current status of Ve.R.-B's unique circumstances and individual needs. *See S.S.W.*, 767 N.W.2d at 731 (noting that current functioning and behavior are among the pertinent considerations for a child-placing agency). The pre-hearing report reflects that, at the time of the hearing, Ve.R.-B. was receiving individual counseling at home, lived with appellant, who was also engaged in Ve.R.-B.'s counseling, and Ve.R.-B. appeared to be "doing well" both in school and in therapy.

Although the district court expressed concerns regarding potential harm to Ve.R.-B. based on the department's petition, the district court's findings on the best interests of the child Ve.R.-B. are not supported by clear and convincing evidence in the record.

**Reversed.**